## HUGHES et al. v. BELMAN et ux.

### No. 9589.

Court of Civil Appeals of Texas. Austin.
Feb. 12, 1947.

Rehearing Denied March 12, 1947.

**432**

Powell, Wirtz, Rauhut & Gideon, Frank Kerbow, George W. Leonard, Jr., J. A. Rauhut and John D. Cofer, all of Austin, for appellants Emery H. Hughes and wife.

Looney and Clark and R. Dean Moorehead, all of Austin, for appellant, Motor & Industrial Finance Corporation.

David L. Tisinger, of Austin, for appellees.

HUGHES, Justice.

This is a suit for damages, actual and exemplary, for alleged fraud in a real estate transaction.

Mr. and Mrs. Emery H. Hughes owned a farm in Robertson County, together with certain livestock and equipment thereon. The farm was the separate property of Mrs. Hughes and the livestock and equipment were their community property.

Mr. and Mrs. Creighton R. Belman owned a house and lot in Travis County, Texas.

The Hughes and the Belmans agreed upon an equal exchange of their properties. The Hughes farm and the Belman home were both encumbered, but in different amounts, and' in order to make the trade even the Belmans executed a note in favor of Mrs. Hughes for the sum of $3,639.35, secured by a vendor's lien and deed of trust upon the Hughes farm.

This suit was brought by Mr. and Mrs. Belman against Mr. and Mrs. Hughes and the Motor and Industrial Loan Company, which company has since changed its name to Motor and Industrial Finance Corporation.

In their petition the Belmans alleged that the farm had been represented to them as containing not less than 200 acres. That after moving on to the farm they learned that there was a shortage in acreage and that the farm actually contained only 170 acres. They further alleged that the representations as to acreage were made by Mr. Hughes, that they were false and fraudulent, and that the value of the farm as actually conveyed was $10,000, and the value which it would have had if it had contained 200 acres would have been $13,-500. They also alleged that the misrepresentations on the part of Mr. Hughes were wilful, and that exemplary damages should be recovered against him in the sum of $1,000.

Upon the institution of the suit the Belmans procured a temporary restraining order enjoining the Hughes from negotiating, transferring or selling the vendor's lien note in the sum of $3,639.35; and by agreement of the parties this restraining order was continued in force pending the trial.

The Belmans further alleged that notwithstanding the temporary restraining order that Mr. and Mrs. Hughes had transferred the vendor's lien note to the Motor and Industrial Finance Corporation, which transfer they alleged to be fraudulent, and that said loan company was not the legal

owner or holder of said note and was not a bona fide purchaser for value thereof without notice.

The Hughes answered this petition denying the misrepresentations and alleging that they in good faith believed the farm to contain 200 acres or more, and that they were not responsible for the Belman's negligence in failing to have the land surveyed; and further alleged that if the farm actually contained less than 200 acres there had been a mutual mistake between the parties, and denied that any misrepresentation as to acreage was wilful.

The Motor and Industrial Finance Corporation filed a cross-action against the Belmans and O. W. Couch (Couch having purchased the Hughes farm) upon the $3,-639.35 note held by it, for foreclosure of the vendor's lien and for attorney's fees, alleging that it was the holder in due course of said note.

The trial was to a jury, and upon special issues it found that the Hughes farm contained substantially less than 200 acres of land, and that the difference in the market value of the Hughes farm, if it had contained 200 acres instead of the number of acres which it actually contained, was at the time of the exchange $2,000.

That Mr. Hughes had represented to Mr. Belman that the farm contained at least 200 acres of land, that Belman believed such representation, and that this was a material inducement but for which Belman would not have made the exchange of the property. It further found that Mr. Hughes wilfully made the representations as to the acreage, and found exemplary damages against him in the sum of $1,000.

The jury also found that the $3,639.35 note was transferred by the Hughes to the Motor and Industrial Finance Corporation subsequent to the date of the temporary restraining order above referred to.

Upon this verdict the court rendered judgment abating the Belman note in the sum of $2,000, and rendered a personal judgment against Mr. Hughes for $1,000 exemplary damages, and also rendered judgment in favor of the Motor and Industrial Finance Corporation for the bal-

ance due upon the Belman note; but denied recovery of attorney's fees.

Mr. and Mrs. Hughes and the Motor and Industrial Finance Corporation have appealed. O. W. Couch has not appealed.

Mr. and Mrs. Hughes will be referred to as appellants, and the Motor and Industrial Finance Corporation as the finance corporation, and Mr. and Mrs. Belman as appellees.

Appellants contend that the Belman note being the separate property of Mrs. Hughes is not subject to abatement in the amount of damages found by the jury as a result of the fraud of her husband, Mr. Hughes, citing Art. 4616, R.S. 1925, and other authorities. The Article referred to in part provides that the separate property of the wife shall not be subject to the torts of the husband.

 We are unable to agree. Liability was not predicated upon the relationship of husband and wife, but was sought to be established upon the theory that Mr. Hughes was the agent of Mrs. Hughes. That a husband can be the agent of the wife is not to be doubted. While the pleadings do not allege that Mr. Hughes was the agent of Mrs. Hughes, the case was tried, in part, upon the theory that he was her agent. No objections to any testimony were made upon the ground that such agency did not exist. Mrs. Hughes never denied that her husband was her agent, and no objection to the court's charge was made on such ground, and no special issues were requested as to the existence of such relationship. Under such circumstances there was no variance between the pleadings and the evidence. See the opinion of this court in Belcher v. Bullion, Tex.Civ.App., 121 S.W. 2d 483.

Art. 4004 in part provides:

" * * * All persons making the false representations or promises and all persons deriving the benefit of said fraud, shall be jointly and severally liable in actual damages, and in addition thereto, all persons wilfully making such false representations or promises or knowingly taking the advantage of said fraud shall be liable in exemplary damages to the person defrauded

in such amount as shall be assessed by the jury, not to exceed double the amount of the actual damages suffered."

Appellants suggest that the above portion of said Article is unreasonable and hence unconstitutional, in so far as it applies to persons not making the representations. We do not think so. In Boyd v. Eikenberry, Tex.Civ.App., 99 S.W.2d 701, 702 (reversed on other points, 132 Tex. 408, 122 S.W.2d 1045), the court said:

"We cannot construe the language of this article to mean that only the person actually making the false representation can be held responsible for the fraud but is intended to include the principal where an agent makes such false representations in the scope of his employment and in the furtherance of his master's business. Any other construction would permit a principal to perpetrate a fraud and escape all liability therefor unless it be shown that the transaction resulted in a benefit to him."

Appellants also rely upon the case of Loma Vista Development Co. v. Johnson, 142 Tex. 686, 180 S.W.2d 922. In that case the court held that a real estate broker who was employed for the purpose of finding a buyer for certain real estate was not, by reason of such employment, authorized to make representations as to the quality of the property, he being a special agent only and wholly without authority to consummate the sale.

The evidence here shows that Mr. Hughes was clothed with full and complete authority to make and consummate the sale. The above authority is, therefore, not in point; further, it inferentially holds that if the agent had been a general and not a special agent the principal would have been liable for the damages prescribed by Article 4004.

Appellants also complain of the judgment against Mr. Hughes for $1,000 exemplary damages, on the ground that since no actual damages were adjudged against him the recovery of exemplary damages is not authorized.

We sustain this contention. It is the settled law of Texas that exemplary damages are not authorized in the absence of the recovery of actual damages. The novel situation is presented here that while actual damages were recovered against Mrs. Hughes none were recovered against Mr. Hughes, but as to him only exemplary damages were allowed. The only case we have found where exemplary damages may be recovered in the absence of recovery of actual damages is Ft. Worth Elevators Co. v. Russell, 123 Tex. 128, 70 S.W.2d 397. The court there held that by reason of the Workmen's Compensation Act actual damages could not be recovered against the employer, but that under the specific provision of Sec. 5 of Art. 8306 of such Act, exemplary damages, in certain cases, are recoverable, and that in a suit for exemplary damages alone against such employer it would only be necessary to find that actual damages had been sustained and the amount thereof. There is no statute which prevented the recovery of actual damages against Mr. Hughes in this case, and we do not believe that the rule denying the recovery of exemplary damages, in the absence of recovery of actual damages, should be extended so as to permit the recovery of actual damages against one defendant and exemplary damages against another defendant. The recovery of exemplary damages is not allowed as a matter of right or as compensation but only as an incident to and enhancement of the actual damages.

Appellants complain of the refusal of the trial court to submit the following issues:

"Requested Issue No. 6: When the contract of exchange was signed on July 30, 1943, did plaintiffs Belman actually believe there were 200 acres in Pin Oak Farm?"

"Requested Issue No. 7: When the contract of exchange was signed on July 30, 1943, did defendants Hughes actually believe there were 200 acres in Pin Oak Farm?"

"Requested Issue No. 13: From a preponderance of the evidence, do you find that plaintiffs Belman and defendants Hughes were mutually mistaken in regard to the exact acreage of Pin Oak Farm?"

These issues raised the question of mutual mistake. Appellants had pleaded that

if there was any shortage in acreage it was due to mutual mistake of the parties. The testimony raised this issue; Mr. Hughes testifying that the property had been conveyed to him as containing 200 acres, more or less, and that it had been assessed for tax purposes at 240 acres; that he believed the property contained more than 200 acres, and that it had never been surveyed. There was other testimony of similar import.

The trial court erred in refusing to submit these requested issues. In State v. Schlick, 142 Tex. 410, 179 S.W.2d 246, 248, opinion by Brewster, Commissioner, the court held that it was error to refuse the submission of specially requested issues as to damage that may have been caused by independent factors named by defendants in their answer, and in so holding used the following language:

"As we understand the opinion of the Court of Civil Appeals, it holds that there was no merit in these complaints because the Schlicks alleged that the highway construction had caused all the damage to their land and because the evidence, 'if not undisputed nor conclusive,' was sufficient to support the jury's finding that all the damage was caused by the highway construction. We disapprove that holding because it ignores the rule that a litigant is entitled to have all issues, pleaded and raised by the evidence, affirmatively presented to the jury, with his right to their submission determined before verdict and not afterward. Thurman et al. v. Chandler et al., 125 Tex. 34, 81 S.W.2d 489. And it is no answer to say that a finding on respondents' issues submitted to the jury amounted to a finding on petitioners' issues which were not submitted, as there is no certain way to tell what the answers to the unsubmitted issues would have been. Workmen's Loan & Finance Co. v. Dunn, Tex. Civ.App., 134 S.W.2d 370. See, also, Dallas Railway & Terminal Co. v. Ector, 131 Tex. 505, 116 S.W.2d 683.

"So if there was evidence in the record that factors other than the highway contributed to the damage to the land, it was reversible error not to submit the matter to the jury."

It has been held that mutual mistake precludes the existence of fraud. Denman v. Stuart, 142 Tex. 129, 176 S.W.2d 730.

The measure of damages for fraud under Article 4004 is radically different from the measure of damages for mutual mistake. Rahl v. Compton, Tex.Civ.App., 112 S.W. 2d 509 (writ dis.). Appellants were, therefore, vitally interested in having the jury find that the parties were mutually mistaken. Under the court's charge the jury had to find fraud or nothing; it had no opportunity· to find mutual mistake. Appellants were entitled to have these issues submitted.

Error is also assigned by appellants to the refusal of the trial court to submit issues to the jury as to the value of the Hughes farm without improvements, arguing that since it was not claimed that the improvements were not as represented the damage, if any, was solely due to a shortage in acreage. The difficulty with this argument is that the statute, in cases of this character, prescribes the measure of damages to be "the difference between the value of the property as represented or as it would have been worth had the promise been fulfilled, and the actual value of the property in the condition it is delivered at the time of the contract."

Ordinarily, where the improvements are as represented and the fraud is with reference to the quantity of the land, the value would only be lessened in accordance with the value of the shortage. This, however, might not. always be true. For instance, if a person agreed to buy a 200-acre farm having improvements thereon of the value of $5,000, and it developed that instead of receiving 200 acres he only received 10 acres, it might be that the value of the improvements and 10 acres would be exceedingly small, and that the value of the shortage would not be the true extent of the loss. In view of another trial we call attention to the language of the statute quoted above, that the actual value of the property in the condition in which it is delivered should be proved. In this case the evidence is far from satisfactory as to this value. In the first place, the extent of the shortage is not definitely shown, the vari-

ance being from 25 to 40 acres. The jury was not requested to find the extent of the shortage, but it must necessarily do so in order to intelligently find the value of the property conveyed. It also appears from the evidence that all of the land actually conveyed was not of the same grade or character, some of it being upland worth $30 an acre, and some of it being bottom land worth $75 an acre. The amount of upland and the amount of bottom land is not satisfactorily shown. All of these matters should be proved in order that the jury may properly find the values prescribed by the statute. See Rahl v. Compton, supra.

We have examined all other assignments made by appellants and find no reversible error therein.

■ Assignment is made as to the sufficiency of the evidence. We have carefully read the statement of facts, consisting of almost 1500 pages, and find that the evidence is sufficient to support the findings of the jury as to the transaction being fraudulent. To even briefly summarize this evidence would consume considerable space and in view of another trial we do not believe this necessary.

■ The finance company assigns as error the judgment of the court abating the Belman note in its hands. The finance company had pleaded that it was an innocent purchaser of the note, and on this phase of the case the court submitted to the jury the following special issue:

"Special Issue No. 8: Do you find from a preponderance of the evidence that the note for $3639.35 executed by Creighton R. Belman and wife in favor of Katherine Brady Hughes was sold and transferred to the defendant Motor and Industrial Loan Company prior to the date of the issuance of the temporary restraining order against the defendants Hughes in this case?"

This was not the controlling issue. The issue which should have been submitted was whether or not the finance company was the holder in due course of the note, that is, whether or not it purchased the same for value, without notice and before maturity. The evidence may be materially different upon another trial as to this issue, and we will, therefore, not discuss the suffi-

ciency of the evidence on this issue as presented by the record before us.

The finance company also complains of the action of the trial court in not allowing attorney's fees on the balance of the note for which judgment was rendered. Appellees contend that the note was not in default, and therefore attorney's fees were properly disallowed. If the note were not in default the finance company was not entitled to a judgment for the balance due and the foreclosure of the lien securing it. In support of the judgment we would hold that the note was in default and that attorney's fees should have been allowed. This is a matter which the trial court can determine upon another trial and be governed accordingly.

Judgment of the trial court is reversed and cause remanded.

Reversed and remanded.