**HUGHES et al. v. BELMAN et ux.**

No. 9930.

Court of Civil Appeals of Texas.
Austin.

May 2, 1951.

Rehearing Denied May 23, 1951.

Cofer & Cofer and John D. Cofer, Austin, for appellants.

David L. Tisinger, W. J. Hodge, Smith, Rotsch & Steakley, and Cecil C. Rotsch, all of Austin, for appellees.

HUGHES, Justice.

This is a suit for damages, actual and exemplary, for fraud in a real estate transaction, and is the second appeal of this case. Our opinion on the first appeal is found in 200 S.W.2d 431 (Writ Ref. N. R. E. ). We refer to that opinion for a complete statement of the case. We will state herein only such matters as are essential to a proper disposition of the points raised.

Trial was to a jury and upon its verdict judgment was rendered for appellees, Creighton R. Belman and wife, Katheryn Belman, against appellants, Emery H. Hughes and wife, Katherine Brady Hughes, for the sum of $3,700 actual damages,[1] and for $1000 exemplary damage against Mr. Hughes and $1,000 exemplary damages Mrs. Hughes.

From this judgment Mr. and Mrs. Hughes have appealed.

An appeal has also been prosecuted by the Motor and Industrial Finance Corporation because of the refusal of the trial

1. This judgment was credited in the judgment with $3,637.35, being the amount of a note dated August 23, 1943, executed by the Belmans in such amount and payable to Mrs. Hughes, the note thereupon being discharged.

court to grant it judgment upon the note described in footnote 1, such corporation in a cross-action claiming to be the owner of such note and entitled to such relief.

■ The first point concerns Special Issue No. 3, which reads:

"Special Issue No. 3: How much greater, if any, do you find, from a preponderance of the evidence, that the reasonable market value of the Hughes farm would have been if it had contained 200 acres of land instead of the number of acres that it actually contained at the time of the exchange of properties?

"Answer by stating the amount, if any, in dollars and cents."

The jury answered: "$3,700.00."

The objection to this issue was: "* * * that the Court by using the words 'how much greater' would indicate that the reasonable market value of the Hughes farm would have been more if it contained 200 acres than if it contained the number of acres which the jury actually found it did contain."

The jury in answer to another issue found that the farm actually contained 160 acres.

Use of the words "if any" in this issue made it unobjectionable on the grounds urged. Gillette Motor Transportation Co. v. Whitfield, Tex.Civ.App., 197 S.W.2d 157, Ft. Worth C.C.A. affirmed 145 Tex. 571, 200 S.W.2d 624.

■ Furthermore, the evidence is undisputed that the farm would have had a greater value if it had contained as many as 200 acres. It is not error for the court in his charge to assume an uncontroverted fact. Hranicky v. Trojanowsky, Tex.Civ. App., 153 S.W.2d 649, Galveston C.C.A. Writ Ref.W.O.M.; Page v. Hancock, Tex. Civ.App., 200 S.W.2d 421, Austin C.C.A. Writ Ref.N.R.E.

Points two and three question the court's authority in rendering judgment for $3,700 damages, in view of these jury findings: (1) Issue No. 3, copied above, (2) Issue No. 4 finding that the reasonable market value of the farm land as unimproved land, per acre, at the time in question was $33,

(3) that the value of bottom land at such time, as unimproved land, was $45 per acre, (4) that the uplands as unimproved lands at such time were worth $15 per acre, and (5) that the true upland acreage of the farm was 64 and the true bottom land acreage was 96.

■ Appellants' contention is that there is a conflict between the $3,700 finding of the jury in Issue No. 3 and the $33 per acre value found by the jury in Issue No. 4; or, in any event, that the maximum judgment should have been the $33 value per acre multiplied by the 40-acre shortage, or $1,320.

These points are overruled. Special Issue No. 3 submitted the proper measure of damages. Art. 4004, Vernon's Ann.Civ. St.; Hughes v. Belman, supra.

Appellants group points four and fifteen which are to the effect that the court erred in admitting in evidence certain abandoned pleadings and proceedings with reference to a temporary injunction.

The abandoned pleadings admitted were (a) original answer of Mr. and Mrs. Hughes consisting of a general demurrer and a general denial, (b) motion of counsel for the Hughes to withdraw original answer and file an amended original answer.

The injunction proceedings introduced were (a) temporary restraining order issued by the court restraining Mr. and Mrs. Hughes from selling or transferring the $3,639.35 Belman note which Mrs. Hughes had received in the transaction involved in this suit, and notices showing service of this order; (b) an agreement of the parties extending such restraining order; (c) an agreement executed by counsel for the parties (Hughes and Belman) that the Belman note would not be transferred pending final judgment.

■ The record shows that notwithstanding the above order and agreements that appellant Motor Finance Company claims to have acquired the Belman note at a time antedating such order and agreements on the part of Mr. and Mrs. Hughes. The evidence regarding this issue will be more fully developed later. It is sufficient to state here that, in our opinion, the mat-

ters referred to were admissible in support of appellees' pleading of a conspiracy between Mr. and Mrs. Hughes and the finance company pertaining to the Belman note, and in refutation of the finance company's claim that it was a holder in due course of the Belman note. The important point which these proceedings tended to prove was that a person would not agree not to transfer a note which he had already transferred. This was in aid of appellees' case. The decision in Dallas Ry. & Terminal Co. v. Hendricks, 140 Tex. 93, 166 S.W.2d 116, 117, cited by appellants, is not in point because there "The evidence (abandoned pleadings) could not have aided plaintiff's case, and was not offered for that purpose."

The fifth point is that the court misplaced the burden of proof in the following issues:

"Special Issue No. 10–A: Do you find from a preponderance of the evidence that the statement, if any, of defendant Emery H. Hughes with reference to the acreage in the Pin Oak Farm was made as a statement of fact or as a statement of opinion of the said Emery H. Hughes?

"Answer: 'It was made as a statement of fact,' or 'It was made as a statement of opinion.'"

The jury answered: "It was made as a statement of fact."

Special Issue No. 10–B: (The same as 10–A, except it inquired as to Mrs. Hughes).

The court charged as follows: "In connection with your answer to Special Issues Nos. 10–A and 10–B, you are instructed that the burden of proof is upon the plaintiff to show by a preponderance of the evidence that the statement was made as a statement of fact."

■ We need not determine this point because the record contains no objections to Special Issues 10–A and 10–B. Nor do we find any assignment in the motion for new trial complaining that these issues misplaced the burden of proof. Rules 320, 324, Texas Rules of Civil Procedure.

■ We will say, however, that we do not believe appellants' objection, if properly preserved, would be good. As we construe the issue it inquired if the statement made was one of fact as *distinguished from* an expression of opinion. This is made clear, we think, by the special instruction given as to the burden of proof.

The point is overruled.

Appellants' sixth to tenth points, inclusive, are to the effect that the court erred in offsetting the $3,700 judgment against the Belman note and in denying the Motor Finance Company judgment on said note; also that there was error in allowing appellees' interest prior to the judgment, since recovery of interest as damages was not pleaded.[2]

■ Appellees sued for $4,500 damages and prayed that: "Said judgment for damages abate said note to the extent thereof and be credited against said note; and in the alternative plaintiffs pray that said note be cancelled; and further for general relief and all costs of suit."

The note referred to was the $3,639.35 Belman note which appellees had given the Hughes in the property exchange which gave rise to this suit. The date of this note was August 23, 1943, which was the date on which the property exchange was effected and which was the date on which the misrepresentations found by the jury became operative.

■ We believe the court correctly abated the note to the extent of the damages shown. As between the parties, the note, to such extent, was without consideration and a mere nudum pactum. Mitchell v. Zimmerman, 4 Tex. 75.

■ Since the amount of damages exceeded the principal of the note, no part of the note ever came into a valid existence and all of its purported obligations as to interest, attorney's fees, etc., are unenforceable.

Appellants rely upon the case of Payton v. City of Big Springs, Tex.Civ.App., 157 S.W.2d 975 (Eastland CCA), as sustaining this point. That case is distinguished because there "Application of the amount of

2. We will dispose of this point on the assumption that the Motor Finance Company is not a bona fide holder of the note, a point later determined.

the judgment in cancellation of a part of the note as of said dates is without support in the pleadings". 157 S.W.2d 981. Here the prayer was for abatement and cancellation.

The excess of the damages found by the jury over the amount of the note was $60.65. After cancelling the note judgment for appellees was rendered in this amount with 6% interest from August 23, 1943. Interest as damages was not specially pleaded, but since the amount claimed in the pleading was laid in an amount sufficient to cover 6% interest on $60.65 from August 23, 1943, to the date of judgment, such interest may be recovered under a prayer for general relief. 13 Tex. Jur., p. 333. Appellees prayed for general relief.

These points are overruled.

The eleventh point complains of a portion of the jury argument made by one of appellees' counsel.

The argument, objections, rulings of the court and surrounding circumstances are shown in appellants' Bill of Exception No. 1, from which we quote:

"Mr. Rotsch (for appellees): First, where is the Journal in ink; second, where is the ledger sheet of Mr. Emery Hughes' account in ink; third, where are the stubs of those checks? There is some reason they didn't want to bring them in. They are in the possession of Motor & Industrial Loan Company. They are not in our possession. We waited every day, figuring they would bring them in; but they didn't bring them in; and all they bring is this sheet—I don't know whether it has been altered or not—but I tell you this, that $400 draft which has a notation on that which cannot be explained 'Motor & Industrial Loan Company, for deposit only' does not fit in here. There is another check that doesn't fit in here; and there are a lot of things that don't fit in here; and there is something else missing. Where is Mrs. Huey? She is the one who can explain this, and I deliberately asked at the last trial, 'Where is Mrs. Huey's office?' I made it

plain she was available, so I could call your attention to the fact that they won't bring her in.

"Mr. Cofer (for appellants): We object to that, because in response to their request we brought her here, and they didn't put her on the stand, and we say that his argument is improper, as the witness was as available to them as to us, and we produced her for two days and they stated, 'We don't want her.'

"Mr. Rotsch: She was here before that came up.

"Mr. Cofer: And after.

"Mr. Rotsch: She is the only one who can explain this.

"Mr. Cofer: We ask the court to instruct the jury to disregard counsel's argument in reference to the failure of the defendant to produce Mrs. Huey.

"The Court: Gentlemen of the jury: All the Court can tell you is that you will answer the questions I have asked you solely from the evidence you hear from the witness stand. Such inference as the attorneys draw from the evidence you are entitled to consider; but any inference they make not based on the record you should not consider.

"Mr. Cofer: We except to the refusal of the Court to instruct the jury to disregard the argument with reference to the defendants' failure to produce Mrs. Huey; and further to the ruling of the Court that the jury are entitled to draw such inference from the evidence or other matters as they may see fit.

"The Court: All right.

"Mr. Rotsch: She is the one that should explain it, and they didn't put her on the witness stand. And now they want to laugh off the fact that Mr. J. Albert Thompson was not a Notary Public, but it is not any laughing matter; and after we showed that J. Albert Thompson took his acknowledgment in this deal with these many peculiarities about it, when he was not a Notary Public, they didn't bring him back and have him make any explanation, in line with what Mr. Cofer wanted. Why didn't

they bring him back? Because Mr. Cofer, the honorable man he is, was not going to put him up there and let us tear out after him on cross-examination. That is the whole truth of the matter. There are other witnesses they could have brought here and offered; but they didn't do it—they didn't do it. Why didn't they bring Mrs. James in here? They were bringing others from Hearne. I don't know whether Mrs. James was available or not.

"Mr. Cofer: We object to the argument that we failed to produce Mrs. James, because she is not our agent, and she is just as available to plaintiff in this case as to the defendant. I would like to ask the Court to instruct the jury to disregard that argument.

"Mr. Rotsch: I withdraw that argument.

"That in preparation of said case, the deposition of the witness, Miss Frances James, was taken on written interrogatories by the plaintiffs and cross interrogatories of the defendants, and said deposition was returned in court and filed in the 53rd District Court of Travis County, Texas, in this cause on the 30th day of July, A. D. 1945. In the previous trial of this case, in this court she was placed on the stand and testified as a witness for the defendants. That the said Miss Frances James at the time her deposition was taken and at the time the matters involved in this controversy occurred resided in the City of Franklin, in Robertson County, Texas, more than one hundred miles from the City of Austin. That said witness, Frances James, was the witness who had made the measurements on the official AAA map of Franklin County, Texas, and had placed the figures on Plaintiffs' Exhibit No. 1, being the AAA worksheet No. 1764 offered in evidence in this case as shown by the Statement of Facts. That there is no other witness involved in this case whose name was James other than the said Miss Frances James and that the reference in the argument by the attorney, Cecil Rotsch, aforesaid could not have referred to any other witness other than the witness, Miss Frances James.

"That Mrs. Huey referred to was an officer of the defendant, Motor & Industrial Finance Corporation, and resided in Travis County, Texas, and she was subject to subpoena, and her deposition was on file in this case and offered in evidence by plaintiffs."

It is our judgment that, in the light of the entire record, any impropriety in the above argument was not of such character as that it probably influenced the verdict unfavorably to appellants. This point is overruled. Rule 434, T.R.C.P.

The twelfth point is to the effect that the undisputed evidence showed that the farm contained at least 168.37 acres and that therefore the court erred in not ignoring the jury finding that it contained only 160 acres.

 In order to appraise this point we look only to the evidence most favorable to appellees.

 Mr. L. N. Kirkpatrick, formerly in charge of the Austin office of the AAA, who qualified as an expert in the use of a land measuring instrument called a planimeter, testified that the Hughes farm contained 156.9 acres. This estimate was somewhat shaken on cross-examination, but we believe that the jury had sufficient basis for its finding. The best of witnesses falter and become confused under vigorous and expert cross-examination conducted in open court, and it was for the jury to fairly weigh the testimony of this witness.

By point thirteen appellants complain of the $1,000 judgment rendered against each of the Hughes for exemplary damages, on the ground that there is no evidence to support the jury findings that Mr. and Mrs. Hughes each wilfully represented to the Belmans that the Hughes farm contained at least 200 acres of land.

The point, as to Mr. Hughes, is submitted without argument and is overruled without discussion.

As to Mrs. Hughes appellants rely upon the following testimony of Mr. Belman: "Q. In other words, at this time, so far as you can recall, Mrs. Hughes never at

any time, nor did anyone in her presence, ever at any time make any representation with reference to the acreage of this farm upon which you relied? A. I expect that is true, so far as I can recall."

The evidence shows that Mr. Hughes repeatedly made the statement to Mr. Belman that the farm contained 240 acres. He explained, however, that he could not deed but 200 because that was all he was paying taxes on. The farm was irregularly shaped and it was difficult to calculate its acreage.

Mrs. Hughes testified:

"Q. Now, Mrs. Hughes, you did not handle the detail negotiations of it, but your husband handled the negotiations for you in your behalf, for the sale of this land? A. I am sorry, but I certainly did handle the negotiations—even the talking.

"Q. You talked to him some, then? A. Yes, sir; and I was present.

"Q. Were you present at all times? A. I think I was present except at one time, which was very immaterial."

Before the trade was closed the question of the farm's size arose and it was then that Mr. Hughes produced an aerial map of the farm which had on it the notation, "259 acres in total farm." Mrs. Hughes was present when this map was shown Mr. Belman. In fact she procured the map from the triple A office and took it to the attorney's office on the day the trade was closed.

It was the testimony of Mrs. Hughes that the 259-acre notation referred to two farms, both owned by her, and not just to the farm sold to Mr. Belman, and that the map contained two pictures so indicating. The Belmans and their attorney testified that the map or folder contained only one picture.

█ This evidence, in our opinion, is sufficient to support the finding of the jury. The testimony of Mr. Belman was evidently intended to mean that Mrs. Hughes made no verbal statement about the farm's acreage.

█ Furthermore, we are of the opinion that the evidence conclusively shows that Mrs. Hughes "knowingly" took ad-

vantage of the misrepresentations made by Mr. Hughes so as to be liable for exemplary damages under Article 4004, V.A.C.S.

█ Appellants' fourteenth, sixteenth and seventeenth points are not briefed and are waived. Appellants expressly waive the twentieth and last point.

Points eighteen and nineteen are that the undisputed evidence shows that appellant Motor & Industrial Finance Corporation was an innocent purchaser for value of the Belman note, and that the court erred in denying it recovery thereon.

The jury answered "No" to issues inquiring if from a preponderance of the evidence it found (1) that the note was actually sold and transferred to the Motor Finance Company; (2) that the Motor Finance Company acquired the note without knowledge of any misrepresentation as to acreage; (3) that the Motor Finance Company acquired the note without knowledge of any fact which would put an ordinary reasonable man upon inquiry to determine whether there had been a misrepresentation as to acreage; and it affirmatively found that the Motor Finance Company did not pay value for the note.

Mr. Hughes was a director and large stockholder in the Motor Finance Company. Mrs. Lois Huey, an employee of the corporation and its secretary and general manager, conducted all of its business,— which was lending money. She and Mr. Hughes had been business associates since about 1933. According to Mr. Hughes the note was sold to the company on August 27, 1943. For the note Mr. Hughes received about $600 in new money and the balance of about $3,000 in cancellation of unsecured obligations which Mr. Hughes owed the company. The loan of so much money without security was out of the ordinary said Mrs. Huey, and regarding the matter she testified: "Q. But you were willing to loan Mr. Hughes that much by reason of your prior association with him and the fact he was a heavy stockholder, and so on, is that right? A. Well, I just don't feel at liberty to answer that, Mr. Tisinger, due to my connection with the company."

Most of the business of the finance company was in lending money on personal property. When the Belman note was purchased Mrs. Huey did not have the title to the property securing the loan examined; nor did she inquire as to the amount of the first lien, the Belman note being secured by a second lien on the farm. Usually, too, when the company bought a note Mrs. Huey would notify the maker of this fact. The Belmans were not so notified.

The person who acted as Notary Public in the transfer of the note and lien was vice-president of the appellant company and a brother-in-law of Mr. Hughes. This transfer was not recorded.

Suit was filed on the Belman note by appellant finance company a year before its face maturity date. When asked about this Mrs. Huey said, "I don't believe I am at liberty to answer that * * *." She further testified that the matter of suing on the note was discussed with Mr. Hughes.

The agreement made by Mr. Hughes not to transfer the Belman note was made long after its purported transfer to the finance company.

We believe these facts authorized the jury to find that the finance company was not a bona fide purchaser of the note.

The irregular manner in which the note was acquired, the unbusinesslike financial transactions between the company and Mr. Hughes, the long and confidential business relationship between Mr. Hughes and Mrs. Huey, and her reluctance to testify concerning the transactions involved, all cast a shadow upon the claim of the company that the purchase of the Belman note was in good faith.

In our opinion such facts are sufficient "as reasonably to form the basis for an inference that in acquiring the negotiable instrument with knowledge of such facts he (the finance company) acted in dishonest disregard of the rights of" appellees. West v. First Baptist Church of Taft, 123 Tex. 388, 71 S.W.2d 1090, 1097.

The judgment of the trial court is affirmed.

Affirmed.